UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
LAFAYETTE DIVISION

| | | |
|---|---|---|
| BENJAMIN SCHWARTZ, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Cause No. 4:13-cv-88 RLM |
| | ) | |
| BOSTON PRITCHETT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

OPINION AND ORDER

Benjamin Schwartz sued the defendants under 42 U.S.C. § 1983 and state laws after he was attacked by a fellow inmate at the Benton County Jail. The defendants have moved for summary judgment. For the following reasons, the court grants the motion.

I. BACKGROUND

The events in this case revolve around an altercation in the Benton County Jail, a small facility with a capacity of 47 inmates and a typical inmate population of about 25. In the early evening, Mr. Schwartz was playing cards in his pod, or housing unit, with three other inmates, one of whom was Matthew Shepard. Mr. Schwartz and Mr. Shepard disagreed about whether another inmate ought to move into their pod. Mr. Schwartz walked toward the door and hit the button on the speaker to alert an officer that they were having a problem. Mr. Shepard then attacked Mr. Schwartz from behind. Mr. Schwartz covered the back of his head with his hands.

1

William Rittenberry, the correction officer on duty, was in another pod at the time. He heard yelling from Mr. Schwartz's pod. Surveillance footage shows that Mr. Shepard's attack lasted about 18 seconds, and that Deputy Rittenberry returned to the control room and tried to speak with Mr. Schwartz through the intercom system just over a minute after the attack began. Deputy Rittenberry couldn't understand what Mr. Schwartz was saying over the intercom, so he came to the pod door and spoke with Mr. Schwartz through the door slot. Deputy Rittenberry told Mr. Schwartz he couldn't enter the pod because there wasn't a second officer on duty.

Jail policy required two corrections officers to staff the jail at all times and, to protect officers, prohibited officers from entering a pod alone. It was customary for a single corrections officer to staff the jail when a second was unable to work. During this incident, Deputy Rittenberry's partner was ill, so he was working alone.

Deputy Rittenberry returned to the control room, called dispatch for assistance, and waited there. Surveillance footage shows that Mr. Shepard continued to make threatening gestures at, but did not attack, Mr. Schwartz while Deputy Rittenberry awaited assistance.

Less than a minute after calling dispatch, Sheriff's Deputy Donald Munson arrived. Deputy Rittenberry and Deputy Munson entered the pod and secured it. The footage indicates that 4 minutes and 40 seconds elapsed between the start of the attack and Deputy Rittenberry and Deputy Munson securing the pod.

Mr. Schwartz sued Deputy Rittenberry, in his individual and official capacities; Ernest Winchester, Deputy Rittenberry's supervisor, in his individual and official capacities; Benton County, Indiana; and Boston Pritchett, in his official capacity as Benton County Sheriff. Mr. Schwartz claims, under 42 U.S.C. § 1983, that: (1) Deputy Rittenberry's acted with deliberate indifference, in violation of Mr. Schwartz's Fourteenth Amendment rights; (2) Mr. Winchester is liable for Deputy Rittenberry's actions as his supervisor; and (3) Benton County and the Benton County Sheriff's Department had a policy or custom that caused the constitutional violation. Mr. Schwartz also asserts state law claims of: (1) negligence against all defendants; (2) negligent infliction of emotional distress against Deputy Rittenberry; and (3) intentional infliction of emotional distress against Deputy Rittenberry. The defendants have moved for summary judgment on all claims.

## II. STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be

believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, 477 U.S. at 255; Weigle v. SPX Corp., 729 F.3d 724, 730 (7th Cir. 2013). The existence of an alleged factual dispute, by itself, won't defeat a summary judgment motion; "instead, the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see* Fed. R. Civ. P. 56(e)(2). "[S]ummary judgment is not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)).

III. Discussion

A. *Claims Against Benton County*

Mr. Schwartz's entire suit is based on the actions of Deputy Rittenberry; the vicarious liability of his supervisor, Commander Winchester; and the policies of Sheriff Pritchett. The county "has no authority over the Sheriff and his deputies, and therefore cannot be blamed for any deficiency in the training or supervision of the defendant deputy sheriffs that may have been responsible." Estate of Drayton v. Nelson, 53 F.3d 165, 167-168 (7th Cir. 1994). Nor can the county can be vicariously liable for the actions of any of these parties. Monell v.

4

Dep't of Social Servs., 436 U.S. 658, 691 (1978). Mr. Schwartz presents no evidence suggesting any connection between the county and the alleged harm, and so his claims against the county can't survive.

B. *Claims Against Deputy Rittenberry*

Mr. Schwartz is suing Deputy Rittenberry in his individual and official capacities for violating his Fourth, Eighth, and Fourteenth Amendment rights when Deputy Rittenberry knew Mr. Schwartz was being attacked and didn't immediately step in to protect him.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of inmates." Farmer v. Brennan, 511 U.S. 825, 832 (1994). It doesn't protect pretrial detainees like Mr. Schwartz, but he's "entitled to the same basic protections under the Fourteenth Amendment's due process clause." Minix v. Canarecci, 597 F.3d 824, 831 (7th Cir. 2010). To prevail, Mr. Schwartz must be able to show that Deputy Rittenberry "was aware of a substantial risk of serious injury to [Mr. Schwartz] but nevertheless failed to take appropriate steps to protect him from a known danger." Guzman v. Sheahan, 495 F.3d 852, 857 (7th Cir. 2007); *see* Haley v. Gross, 86 F.3d 630, 640 (7th Cir. 1996) (constitutional violation occurs only if "deliberate indifference by prisoner officials effectively condones the attack by allowing it to happen"). The court interprets all evidence in Mr. Schwartz's favor, but he can't meet this burden.

Mr. Schwartz presents evidence from which a jury could reasonably find that Deputy Rittenberry was aware of a substantial risk of harm. It's enough that Mr. Rittenberry presents evidence so that a reasonable factfinder could determine that Mr. Shepard was "an obvious, substantial risk to inmate safety." Farmer v. Brennan, 511 U.S. at 844; *see* Brown v. Budz, 398 F.3d 904, 911-912 (7th Cir. 2005). Deputy Rittenberry said during his deposition that Mr. Shepard showed violent tendencies and assaulted other inmates in the past. Interpreting this evidence most favorably to Mr. Schwartz, a reasonable trier of fact could find that Deputy Rittenberry knew of Mr. Shepard's violent tendencies, and so he knew Mr. Shepard could be a risk to others, including Mr. Schwartz.

But Mr. Schwartz's case stumbles on whether there's evidence to support a finding that Mr. Rittenberry "failed to take appropriate steps" to protect him. Guzman v. Sheahan, 495 F.3d 852, 857 (7th Cir. 2007). First, even if Mr. Shepard had a generally violent temperament, Mr. Schwartz can't show that it was unreasonable for Mr. Shepard ever to be in the same room as Mr. Schwartz. Many people in prison have had fights in the past, but there isn't evidence to suggest that Mr. Shepard required segregation or that he posed a particular risk to Mr. Schwartz.

Second, Mr. Schwartz can't show that Deputy Rittenberry failed to take appropriate steps when waiting for backup before entering the pod. In Guzman v. Sheahan, 495 F.3d 852, 857 (7th Cir. 2007), a single corrections officer waited three to six minutes for backup before breaking up an ongoing fight between

6

inmates. The court held that "[a] prison guard, acting alone, is not required to take the unreasonable risk of attempting to break up a fight between two inmates when the circumstances make it clear that such action would put her in significant jeopardy." *Id.* at 858. In Guzman, that officer might have deviated from prison policy when she left her post while waiting for backup, but a minor deviation doesn't necessarily amount to deliberate indifference. *See id.* ("A deviation of this sort, especially when the officer continued to take steps aimed at stopping the situation, cannot be characterized as deliberate indifference.").

Deputy Rittenberry, just like the officer in Guzman, took the step of securing the pod only after a second, backup officer arrived. The attack in this case was 18 seconds, far shorter than the one in Guzman. Deputy Rittenberry sought backup once he spoke to Mr. Schwartz over the intercom, and then through the door to discover that Mr. Schwartz had been attacked. Less than 4 minutes after responding to the attack, Deputy Rittenberry entered the pod with Deputy Munson and secured it. During the waiting period, Mr. Shepard didn't attack Mr. Schwartz any more. A deviation from policy here, if any, was as minor as that in Guzman. Deputy Rittenberry intervened adequately and no reasonable factfinder could find otherwise.

Proving deliberate indifference to an inmate's safety requires conduct "equivalent [to] criminal recklessness." Guzman v. Sheahan, 495 F.3d at 857. When viewed in the light most favorable to Mr. Schwartz, Deputy Rittenberry wasn't reckless in leaving Mr. Shepard in the pod with Mr. Stewart, at least so

7

long as he was on guard to diffuse a potentially violent situation. The evidence indicates only that Deputy Rittenberry was intent on securing Mr. Schwartz once he became aware of the attack. Waiting for backup before entering doesn't contradict this. *See* Peate v. McCann, 294 F.3d 879, 882 (7th Cir. 2002) ("[P]rison officials who actually knew of a substantial risk to inmate health or safety are free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."). No reasonable factfinder could find deliberate indifference here.

### C. *Claims Against Commander Winchester*

Mr. Schwartz claims that Commander Winchester is liable, as Deputy Rittenberry's supervisor, for Deputy Rittenberry's alleged Section 1983 violations. First, a supervisor can't be liable for the constitutional violations of his officers "simply by virtue of his supervisory role." Morfin v. City of E. Chi., 349 F.3d 989, 1001 (7th Cir. 2003). He "must have been personally involved in [the unconstitutional] conduct." Jones v. City of Chi., 856 F.2d 985, 992 (7th Cir. 1988). Personal involvement requires that he "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear what [he] might see. [He] must in other words act either knowingly or with deliberate, reckless indifference." Id. at 992-993.

Mr. Schwartz presents no evidence to support Commander Winchester's personal involvement in the incident. Commander Winchester's deposition

8

testimony shows that he knew inmates sometimes to get into fights. The testimony shows that in a previous incident, Deputy Rittenberry went into a pod alone and Commander Winchester then told him not to do that in the future. There's no evidence that Commander Winchester facilitated, approved, or condoned acts that compromised inmates' safety, only that he implemented a policy to do this in a way that also protected the officer. As explained before, there's no evidence that this policy is unreasonable, and certainly not that it rises to the level of deliberate indifference. *See* Guzman v. Sheahan, 495 F.3d 852, 858 (7th Cir. 2007).

D. *Official Capacity Claim Against Sheriff Pritchett*

Mr. Schwartz's claim against Sheriff Pritchett in his official capacity is effectively a claim against the Benton County Sheriff's Department. Kentucky v. Graham, 473 U.S. 159, 165 (1985). A governmental entity can't be held liable under Section 1983 on a *respondeat superior* theory. Jenkins v. Bartlett, 487 F.3d 482, 492 (7th Cir. 2007) (citing Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978)). Sheriff Pritchett can only be liable if "the deprivation of constitutional rights is caused by its own policy or custom." Walker v. Sheahan, 526 F.3d 973, 977 (7th Cir. 2008). Mr. Schwartz can show an unconstitutional policy or custom through: "(1) an express policy causing the loss when enforced; (2) a widespread practice constituting a 'custom or usage' causing the loss; or (3) a person with final policymaking authority causing the loss." Id.

9

An express policy theory requires "a policy that explicitly violates a constitutional right when enforced" or the absence of a policy addressing certain issues. Calhoun v. Ramsey, 408 F.3d 375, 379-380 (7th Cir. 2005). Mr. Schwartz relies on the first when he argues that the express policy of prohibiting officers from entering pods alone resulted in his unconstitutional deprivation. Assuming this was an express policy, its enforcement doesn't explicitly violate a constitutional right. As explained before, the policy resulted in the pod being secured within minutes.

Without an actionable express policy, Mr. Schwartz must rely on a "widespread practice constituting a 'custom or usage' causing the loss." Walker v. Sheahan, 526 F.3d at 977. But Mr. Schwartz only has evidence of a single incident, and one without constitutional deprivation at that. That's not enough to demonstrate a "widespread practice." City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985) ("But where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary in every case to establish both the requisite fault on the part of the municipality, and the causal connection between the 'policy' and the constitutional deprivation."). The existence of other fights in the jail also doesn't indicate that these are necessarily unconstitutional deprivations or that they have any connection to the policy.

Third, Mr. Schwartz can show that "a person with final policymaking authority caus[ed] the loss." Walker v. Sheahan, 526 F.3d at 977. Mr. Schwartz doesn't provide evidence that the sheriff had any connection with the loss.

Mr. Schwartz can't prevail in his claims against Sheriff Pritchett.

*D. State Tort Claims*

"When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." Al's Serv. Ctr. v. BP Prods. N. Am., Inc., 599 F.3d 720, 727 (7th Cir. 2010); 28 U.S.C. § 1367(c)(1). There are exceptions that, if met, weigh in favor of retaining jurisdiction. *See* Williams v. Rodriguez, 509 F.3d 392, 404 (7th Cir. 2007). The parties didn't argue for these exceptions, so the court relinquishes jurisdiction over the remaining claims.

IV. CONCLUSION

Based on the foregoing, the court GRANTS the defendants' motion for summary judgment [Doc. No. 26].

SO ORDERED.

ENTERED:  March 31, 2017 

  /s/ Robert L. Miller, Jr. 
Judge
United States District Court